MARYLAND CASUALTY COMPANY, Appellant, v. EDWARD A. GRACE Defendant, and ALFRED P. BURROUGHS et al., Defendants Respondents.

Argued December 7, 1943; decided March 2, 1944.

*Daniel Combs* and *William Richards* for appellant. I. The appellant was liable for the claims it paid. (*Bischoff* v. *Yorkville Bank,* 218 N. Y. 106; *Grace* v. *Corn Exchange Bank Trust Co.,* 287 N. Y. 94; *Ætna Casualty & Surety Co.* v. *Catskill Nat. Bank & Trust Co.,* 102 F. 2d 527; *Maryland Casualty Co.* v. *City Nat. Bank,* 29 F. 2d 662.) II. The only way respondents could attack the payment made by appellant was by pleading and proving that the payment was made in bad faith with intent to injure respondents. (*Halstead Lumber Co.* v. *Hartford Acc. & Ins. Co.,* 298 Pac. 925; *National Surety Co.* v. *Casner,* 253 S. W. 1057; *Fidelity & Deposit Co. of Maryland* v. *Thieme,* 193 So. 496; *Guarantee Co.* v. *Pitts,* 78 Miss. 837; *Illinois Surety Co.*

v. *McGuire*, 145 N. W. 768; *United States Fidelity & Guaranty Co.* v. *Jones*, 87 F. 2d. 346; *Continental Cas. Co.* v. *Nat. Slovak Sokol*, 269 N. Y. 283; *American Bonding Co. of Baltimore* v. *Alcatraz C. Co.*, 202 F. 483; *National Surety Co.* v. *Fulton*, 192 App. Div. 645; *City of New York* v. *Baird*, 176 N. Y. 269.)

*Arthur Stryker* for respondents. I. Appellant was required but failed to prove that it was compelled to pay the claim of Trans-Atlantic Passenger Conference or that it acted in good faith in paying said claim. (*Lissner* v. *Haynes Automobile Co.*, 105 Misc. 359; *Bridgeport Insurance Co.* v. *Wilson*, 34 N. Y. 275; *Village of Port Jervis* v. *First National Bk.*, 96 N. Y. 550; *Taylor* v. *Barnes et al.*, 69 N. Y. 430; *Smith* v. *Columbia Casualty Co.*, 225 App. Div. 223; *Brescia Construction Co.* v. *Walart Construction Co.*, 245 App. Div. 105; *Wheeler et al.* v. *Sweet et al.*, 137 N. Y. 435; *City of New York* v. *Baird*, 176 N. Y. 269; *Watterson* v. *Tremaine*, 24 N. Y. S. 2d 830; *Hilleary* v. *Skookum Root Hair Grower Co.*, 4 Misc. 127.) II. The agency agreement required Grace to keep the trust funds separate and apart from all other funds and moneys in his hands. (*Bischoff* v. *Yorkville Bank*, 218 N. Y. 106; *Grace* v. *Corn Exchange Bank Trust Co.*, 287 N. Y. 94.)

LEHMAN, Ch. J. Transatlantic Passenger Conference was, at all times referred to in this opinion, an association of steamship lines. Each person authorized to act as agent of any of these lines and to sell its passenger tickets was required to enter into an agency contract which defined the obligations of the parties. In May, 1928, the plaintiff company executed and delivered its surety bond to the Secretary of the Transatlantic Passenger Conference, hereinafter called "Conference," as trustee for the steamship lines, therein named, which were members of the Conference. Under the terms of the bond the plaintiff surety company agreed to pay the loss any of the lines "may sustain of money or other personal property by any act of Personal Dishonesty, Forgery, Theft, Larceny, Embezzlement, Wrongful Conversion, Abstraction or Misapplication, directly or through connivance with others, by any Agent named in the schedule hereto attached * * *, PROVIDED, that the Obligee shall have notified the Surety within thirty (30) days after becoming aware of such act of any Agent * * *."

In 1933 Edward A. Grace sought appointment as a steamship agent, but could not obtain an agency contract unless he furnished a fidelity bond. Upon his application his name was added by the plaintiff in December, 1933, to the list of names in the schedule attached .to the bond which had been executed and delivered by the plaintiff to the Conference as trustee. Grace was a member of the firm of Henderson & Grace, steamship agents. The plaintiff had previously " bonded " that firm as such agents, but had canceled its bond after it had received notice that the agents had failed to remit promptly to the lines moneys collected by the agents upon the sale of steamship tickets. The firm had subsequently paid to the lines the amount of all remittances for which it had been in default. Nevertheless, the plaintiff refused to add the name of Grace to the schedule of agents included in its fidelity bond unless Grace furnished the plaintiff indemnity against any loss which the plaintiff might be compelled to pay by reason of inclusion of the name of Edward A. Grace in the list of agents covered by its fidelity bond to the Conference.

Accordingly, Grace furnished to the plaintiff indemnity agreements executed by the defendants Knight and Burroughs, respectively, on October 26, 1933, and December 5, 1933. These indemnity agreements provided, among other things, that the surety company executing the fidelity bond " shall have the right, and such surety or sureties are hereby authorized, but not required: (a) to adjust, settle or compromise any claim, demand, suit or judgment upon said bond, unless the Indemnitors shall request such surety or sureties to litigate such claim or demand, or to defend such suit, or to appeal from such judgment, and shall deposit with such surety or sureties collateral satisfactory to such surety or sureties sufficient in its or their sole judgment to pay any judgment or judgments, rendered or that may be rendered, with interest, cost, expenses and attorneys' fees ". The agreement further provided that the indemnitors would " pay promptly, from time to time, upon demand unto the surety or sureties executing said bond, the full amount of any and all moneys paid by the said surety or sureties in settlement or compromise of any claims, suits and judgments thereupon, under the belief that it or they were liable therefor, whether liable or not ".

In September, 1934, Grace defaulted in payment of moneys which he had received as agent for some of the lines. The lines gave notice promptly of the default. The plaintiff informed the defendants, its indemnitors, of the default. They did not request the plaintiff surety company to litigate these claims. The plaintiff paid them. It then demanded that the indemnitors reimburse it for the amount it paid in settlement of these claims. Upon the refusal of the defendant indemnitors to repay the plaintiff, the plaintiff brought this action to recover from them the amount it had paid.

In its complaint the plaintiff pleaded that " Thereafter the plaintiff duly investigated the alleged shortages in the accounts of the defendant, Edward A. Grace, and found that the same were as alleged in the aforementioned proofs of loss * * * and on or about the 28th day of December, 1934, plaintiff was compelled to pay to the Transatlantic Passenger Conference the sum of $13,184.71 in reimbursement of the moneys not accounted for by the defendant, Edward A. Grace." In their answer the defendants denied these allegations, and as a first affirmative defense alleged facts which they contend are sufficient to establish that the plaintiff was not *compelled* to pay these claims, but did so *voluntarily*.

They also alleged in that defense, and at the trial introduced proof to sustain their allegations, that by the terms of the agency contract between Grace as agent and the steamship lines, executed in accordance with the rules of the Conference in December, 1933, when Grace was appointed an agent, he agreed to hold the moneys collected by him as agent in trust for the lines and " separate and apart from all other funds and moneys in his hands." With the knowledge of the steamship lines Grace deposited moneys collected as agent in his general bank account and in other respects disregarded the terms of his agreement. The steamship lines did not for such breaches of the agency contract cancel the contract, though the contract provided that " any violation of this requirement with respect to any one of the above-mentioned Lines will result in the cancellation of the agency by all of such Lines which it represents ", and also provided that " the agent who is at any time in default to any of the above-mentioned Lines will be immediately disqualified and his agency will be promptly can-

celled by all of the above-mentioned Lines '' and that '' the agent, immediately upon disqualification, is prohibited from selling tickets  *  *  *  or from transacting any other business of the agency ''.

Doubtless any of the lines having notice of the agent's breach of contract could have canceled the contract, and if it had done so promptly, the lines would not thereafter have sustained losses for which the plaintiff could be held under its bond. None of the lines availed itself of its contractual right to cancel the contract and to disqualify the agent, and so far as appears, none of the lines insisted that the agent should, in the future, observe the rules provided in the contract for the conduct of his business. The surety received notice of the agent's acts of dishonesty which caused loss to the lines. It received no notice of earlier breaches of contract by the agent in regard to the manner in which the moneys collected by the agent should be held and thereafter remitted to his principals. It is not disputed that the lines did suffer loss as claimed by the agent's dishonesty, and when the surety company received proof of such loss it paid the amount of the loss without other investigation which might have disclosed earlier breaches of the agency contract.

At the close of the trial the plaintiff moved for the direction of a verdict in its favor for the amount demanded in the complaint. The motion for the direction of a verdict was denied. The Trial Judge held in effect that the plaintiff should not have paid the claims without investigation to determine whether the agency contract had been breached previously, and that before settlement of the claims the plaintiff company was bound to inform the indemnitors of all the facts which would have been discovered upon such an investigation. He submitted to the jury a number of questions of fact based upon such obligation to investigate, including the question whether the settlement of the claim had been made in good faith.

We think that as matter of law the plaintiff was entitled to the direction of a verdict upon the undisputed facts. The agency contract defines the scope of the agency covered by the plaintiff's fidelity bond, and therefore the field in which acts of dishonesty by the agent would give rise to liability by the surety under its bond. Otherwise the agency contract does

not affect the obligation of the surety under its bond. The plaintiff was not a party to the contract and the principal assumed no obligation to the plaintiff under that contract. The provisions of the agency contract imposing upon the agent an obligation to conduct the business of the agency in the manner set forth in the agency contract, including the obligation to hold the moneys received by him as agent in trust for the principal, and separate and apart from his own moneys, did not result in automatic cancelation of the agency for breach of such obligation, nor did it impose upon the principal any obligation to exercise the right to cancel the contract as stipulated in the contract. The principal had choice whether to waive such breaches or to cancel the agency. It was under no obligation to the surety to insist upon compliance by the agent with the provisions of the agency contract, or to notify the surety of a breach by the agent unless the agent's breach caused a loss for which the surety bond was intended to furnish indemnification. Investigation by the surety company in regard to possible prior defaults of the agent under the agency contract would not, so far as appears, have disclosed any ground of defense to the claims made against the surety company.

Even if that were not true, the indemnitors would still have been liable under the indemnity agreement, since they had authorized the plaintiff to settle claims and had agreed to pay to the plaintiff the full amount paid by it as surety in settlement of any claims " under the belief that it " or was " liable therefor, whether liable or not." In this case no evidence was produced which impugns in any manner the good faith of the plaintiff in making the payment, and there can be no doubt that it paid the claims in the honest belief that it was liable for such claims. It had promised payment to the principal of any loss caused by the agent's acts of dishonesty, provided it received notice of such loss in manner stipulated by the contract. It received such notice, and it received proof that the loss had been suffered. In paying the claim the plaintiff performed its contractual obligation to the lines in accordance with the letter of its bond. It may insist that the defendants also perform their obligation in accordance with the letter of their bonds.

The judgments should be reversed and judgment directed in favor of the plaintiff, with costs in all courts.

LOUGHRAN, RIPPEY, LEWIS, CONWAY, DESMOND and THACHER, JJ., concur.

Judgments reversed, etc.