**NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., Plaintiff,**

v.

**Joseph FREMONT and Beverly Fremont, William J. Knowlton, Donal W. Loosely, Carl H. McBain, Simeon Morin and John R. Woillard, Jr., Defendants.**

No. 89 Civ. 1681 (LLS).

United States District Court, S.D. New York.

March 25, 1991.

---

Joseph Paykin, D'Amato & Lynch, New York City, for plaintiff.

Peter A. Triandafilou, Fink Weinberger, P.C., New York City, for defendant Morin.

## OPINION AND ORDER

STANTON, District Judge.

National Union Fire Insurance Company of Pittsburgh ("National Union"), an issuer of financial guarantee bonds, sues to enforce an indemnity agreement between itself and limited partners in a tax shelter limited partnership, and to enforce its rights as subrogee on the limited partners' promissory notes which it honored on their behalf. National Union issued a bond which guaranteed to the partnership, and to the bank that financed the partnership, that the limited partners would make all of the capital contributions represented by the promissory notes they gave to the partnership. The defendant limited partners stopped making their required contributions, and National Union made them on their behalf. Now it sues them for reimbursement under indemnity agreements they gave National Union at the time it guaranteed their payments, and as subrogee of the notes on which they defaulted.

National Union moves for summary judgment against defendant Simeon Morin. The motion is granted.

## BACKGROUND

In December, 1982 defendant, Simeon Morin purchased a limited partnership interest in E.A. Associates ("E.A.A."), a New York Limited Partnership. Defendant paid for this interest partly with cash and partly with a series of five promissory notes (the "notes") in the total principal amount of $71,300. Pl. Statement Pursuant to Rule 3(g) ¶ 2.

Defendant and National Union entered into an indemnity agreement regarding the notes (the "indemnity agreement"), and National Union issued a bond guaranteeing the notes (the "bond"). The indemnity agreement required defendant to reimburse plaintiff for any payments it made under the bond, and for interest and expenses incurred in obtaining reimbursement. The bond guaranteed the payment of defendant's notes and required National Union, as surety, to make payment on the notes in the event of defendant's default. Pl. 3(g) Statement ¶¶ 3–4. The bond further provided that if National Union made payments on the notes to cure an investor's default, it would be subrogated to the note holder's rights against the investor. Exhibit C to Complaint ¶ 7.

Defendant failed to make payment on his final note, which became due on March 15, 1987. Pursuant to the terms of the bond, plaintiff made payment for him. Plaintiff sues to recover this payment and interest, attorneys' fees, and expenses pursuant to the indemnity agreement. It now moves for summary judgment.

## DISCUSSION

### 1. *Summary Judgment*

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there

is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R. Civ.P. 56(c). "Summary judgment is appropriate when, after drawing all reasonable inferences in favor of the party against whom summary judgment is sought, no reasonable trier of fact could find in favor of the nonmoving party." *Lund's, Inc. v. Chemical Bank,* 870 F.2d 840, 844 (2d Cir. 1989). If a summary judgment motion is properly supported, "the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (quoting Fed.R.Civ.P. 56(e)).

## 2. *National Union's Rights Under the Promissory Note*

National Union seeks recovery under the notes pursuant to the bond, and as the transferee of LaSalle National Bank (the "bank"). It argues that the bank was a holder in due course of the note, and that it enjoys all the bank's rights and is entitled to payment on the note as the bank's transferee.

■ It is undisputed that the bank was a holder in due course of defendant's note. A holder of a promissory note establishes a *prima facie* case for recovery by proving execution of the note and a default in payment pursuant to its terms. *Hogan & Co. v. Saturn Management, Inc.,* 78 A.D.2d 837, 433 N.Y.S.2d 168, 169 (1st Dep't. 1980); *Shields v. Stevens,* 55 A.D.2d 1017, 391 N.Y.S.2d 766, 767 (4th Dep't. 1977). Once a holder establishes a *prima facie* case, the maker has the burden of coming forward with proof of evidentiary facts—not merely conclusory allegations—demonstrating the existence of a genuine and substantial issue rebutting the holder's entitlement to payment. *Shields,* 391 N.Y. S.2d at 767.

■ National Union, as transferee of the promissory note, assumes the right of the transferor bank unless the "transferee ... has himself been a party to any fraud or illegality affecting the instrument or ... as a prior holder had notice of a defense or claim against it...." U.C.C. § 3–201(1).[1]

Defendant relies on *National Union Fire Ins. Co. v. Turtur,* 892 F.2d 199 (2d Cir.1989). In *Turtur* the district court found, and the Second Circuit affirmed, that defendants had

> barely raised a factual issue as to whether National Union was aware of the misstatements in the PPM before it issued the bond, (assuming that such knowledge would make National Union such a "party to [a] fraud or illegality affecting the [notes]" as to disable it from improving its position by suing as the Bank's subrogee ...)

*Id.* at 206. This finding was based on Turtur's specific factual allegations of incidents and information which might have put National Union on notice of the alleged fraud before National Union issued the bond.

Defendant argues that prior to issuing the bond, National Union was aware or should have been aware of misrepresentations and fraud in the E.A.A. Private Placement Memorandum (the "PPM") on which defendant relied when he purchased his interest in E.A.A. He alleges that National Union, as part of its normal practice, reviewed the E.A.A. PPM and investigated the E.A.A. transaction with due diligence. He argues that from a review of the PPM alone, National Union knew or should have known that, contrary to the assertions in the PPM, (1) E.A.A. did not have a "profit motive"; (2) the E.A.A. transaction was not "substantially dissimilar" to other Rothschild sponsored partnerships which had been found in tax audits to lack economic substance; and (3) investors in E.A.A. would not receive anticipated tax benefits. Morin Aff. ¶¶ 14–15; Def. Mem. of Law 7–8.[2]

---

1. It is undisputed that National Union was not a prior holder with notice of a defense or claim against the note.

2. If this motion is not denied, defendant seeks additional discovery pursuant to Fed.R.Civ.P. 56(f). Morin Aff. ¶ 17; Def.Mem. of Law 7 n. 2. However, defendant provides no reason for

To establish fraud, defendant must show "the traditional five elements of fraud: misrepresentation of a material fact, falsity of that representation, *scienter*, reliance and damages". *Mallis v. Bankers Trust Co.*, 615 F.2d 68, 80 (2d Cir.1980) (italics in original) (citations omitted), *cert. denied*, 449 U.S. 1123, 101 S.Ct. 938, 67 L.Ed.2d 109 (1981).

Assuming that there is a genuine issue regarding fraudulent misstatements in the PPM, defendant has not raised a genuine issue of whether National Union was a party to the fraud. He contends that the income projections in the PPM project a net loss to the partnership, and therefore it was obvious to National Union from a mere reading of the PPM that E.A.A. did not have a profit motive and that the transactions lacked economic substance. Def. Mem. of Law 7–8. This contention is based on a misreading of the PPM which in fact projects, for the thirteen years ending December 31, 1994 a net income of $656,759 (projected rental losses of $2,262,241, plus projected residual income of the equipment of $628,500, plus projected return from lessee's anticipated net residual income of $2,290,500). *See* Paykin Reply Aff. ¶ 2; Morin Aff. ¶ 14.

Other than his mistaken contention as to projected income, defendant has not alleged any facts or circumstances from which National Union's participation in the alleged fraud could be inferred. Accordingly, he has not raised a genuine issue of whether National Union was a party to any fraud or illegality affecting the instrument. *See National Union Fire Ins. Co. v. Woodhead*, 917 F.2d 752, 757–58 (2d Cir. 1990).

Nor should the assumption in which this court indulged in *Turtur* (that knowledge of misstatements might render National Union a "party" to a fraud) be extended here. Under U.C.C. § 3–201(1) mere "notice of a defense" (such as fraud or illegality) does not disable the transferee unless the transferee had the knowledge as "a prior holder"—which indisputably National Union was not. Furthermore National Un-

ion, which owed defendant no fiduciary duty, was under no obligation to disclose to him deficiencies in the PPM of which it became aware in the course of making its own investigations for its own purposes. *See Woodhead*, 917 F.2d at 758.

Defendant had no defenses to payment against the bank as a holder in due course. National Union, as transferee, took the note with all the rights of the transferor bank. *See Woodhead*, 917 F.2d at 756–58; *National Union Fire Ins. Co. v. Connally*, 87 Civ. 3815, 1990 WL 20156, 1990 U.S. Dist. Lexis 2039 (S.D.N.Y. March 1, 1990). Plaintiff is entitled to summary judgment on the note as the bank's transferee.

### 3. *National Union's Rights Under the Indemnity Agreement*

■ In *Turtur*, 892 F.2d at 203–05, the Second Circuit held that if an indemnity agreement is part of a package of interdependent contracts, one of which was induced by a fraud to which the plaintiff was a party, all of the contracts in that package may be unenforceable by that plaintiff. The court held that the interdependency of contracts "boils down to the intent of the parties", and that "[q]uestions of intent ... are usually inappropriate for disposition on summary judgment." *Id.* at 205.

Here, even assuming that defendant raises a genuine issue of interdependence of the contracts and fraud by third parties, he does not raise a genuine issue of whether National Union was a party to the fraud in the PPM, because he has not alleged any facts or circumstances from which plaintiff's knowing participation in fraudulent activity can be inferred. Therefore, under *Turtur*, defendant has not raised a genuine issue of fact regarding National Union's right to enforce the indemnity agreement.

■ Defendant further states that based on the subscription agreement and the indemnity agreement, he believed that National Union would issue a conditional

thinking that the discovery sought would change the result.

bond.[3] He argues that National Union breached the indemnity agreement and issued an unconditional bond which waived any defenses National Union had to payment due to acts of omissions of Obligee (E.A.A.) as against a permitted assignee, such as the bank.

National Union argues that defendant made a unilateral mistake as to the parties' intention, and that given that nature of this transaction, the defendant should have known that National Union was required to issue an unconditional surety bond. Because the indemnity agreement does not specify which type of suretyship applies, it is ambiguous as to the type of suretyship the parties intended. This factual issue cannot be decided on a motion for summary judgment. *National Union Fire Ins. Co. v. Alexander*, 728 F.Supp. 192, 199 (S.D.N.Y.1989).

However, this factual issue, though genuine, is immaterial. Assuming the parties did not intend National Union to waive defendant's defenses, the ultimate result would be that "the waiver would be ineffective as to [Mr. Morin] and [he] could still assert [his] defenses against the Bank and National Union." *Id.* at 199. Here defendant has not alleged any defenses against the bank, which was a holder in due course. Therefore, even if National Union had issued a conditional surety bond which did not waive Morin's defenses, it would have been obliged to make good on defendant's default, and defendant would still be liable under the indemnity agreement.

Accordingly, plaintiff is entitled to summary judgment on the indemnity agreement.

## CONCLUSION

National Union's motion for summary judgment is granted.

---

**3.** This defense is considered here regardless of whether it was adequately pleaded in defendant's answer.