[721 NYS2d 307]

BLUEBIRD PARTNERS, L.P., Respondent, v FIRST FIDELITY BANK, N. A., et al., Appellants, et al., Defendants. (And a Third-Party Action.) (Appeal No.1.)

BLUEBIRD PARTNERS, L.P., Respondent, v UNITED JERSEY BANK, Appellant, et al., Defendants. (And a Third-Party Action.) (Appeal No.2.)

First Department, February 6, 2001

## APPEARANCES OF COUNSEL

*Michael C. Harwood* of counsel (*David M. Friedman* and *Howard W. Schub* on the brief; *Kasowitz, Benson, Torres & Friedman, L. L. P.,* attorneys), for respondent.

*Marc Wolinsky* of counsel (*Lawrence Miller* and *Louis Solomon* on the brief; *Wachtell, Lipton, Rosen & Katz, LeBouef, Lamb, Greene & MacRae, L. L. P.,* and *Solomon, Zauderer, Ellenhorn, Frischer & Sharp,* attorneys), for First Fidelity Bank, N. A. and others, appellants.

*Lester M. Kirshenbaum* and *Gregory R. Fidlon* of counsel (*Kaye, Scholer, Fierman, Hays & Handler, L. L. P.,* attorneys), for Summit Bank, appellant.

## OPINION OF THE COURT

RUBIN, J.

This is an anomalous case in which plaintiff, conceding that it made "a nice profit" from speculation in bonds issued by a corporation that had sought protection in bankruptcy, sues for damages in connection with those transactions. The basis of the complaint is legal malpractice; however, as reflected in previous decisions of this Court, plaintiff is not a client of the asserted tortfeasors (261 AD2d 200), and the attorneys are no longer parties defendant (259 AD2d 273, 274, *revd on other grounds* 94 NY2d 726). Instead, this action is being prosecuted against their clients, whose only indiscretion seems to have been reliance upon the advice of competent counsel (248 AD2d 219, 223, *lv dismissed* 92 NY2d 946).

This matter is before this Court on appeal from an order denying, upon reargument, defendants' motion for summary judgment. To briefly state the facts, plaintiff Bluebird Partners, L.P. acquired bonds in the form of first and second series equipment trust certificates issued by Continental Airlines in 1987. The offering prospectus contains a number of cautionary statements to the effect that the airline is "highly leveraged" and operates in an industry subject to "volatility" in operating results. The prospectus states explicitly, "The right of the Collateral Trustee to repossess and dispose of the Collateral in the event of a default is likely to be significantly impaired by applicable bankruptcy law if a bankruptcy proceeding were to be commenced by or against the Company."

At the time plaintiff's predecessors began accumulating first series certificates in 1991, Continental was already involved in bankruptcy proceedings, having filed a petition in December 1990. The initial purchases continued through 1992 under the direction of Jack Mayer, who formed plaintiff limited partnership on January 14, 1994. According to the complaint, plaintiff acquired the first series certificates on January 27, 1994. Plaintiff subsequently made its own purchases of second series certificates in the early part of that year. Plaintiff's memorandum of law submitted upon reargument states that the bonds were acquired for an average price of "approximately 32 cents on the dollar and the collateral was liquidated for approximately 70 cents on the dollar."

Defendants are first and second series collateral trustees and their successors. It is alleged that, in 1991 and 1992, defendants—or specifically, defendants' attorneys—were negligent in failing to timely file a motion in Bankruptcy Court for adequate protection of the collateral (airplanes and engines) securing the debt instruments. As a result, plaintiff maintains, it was damaged in an amount estimated to be somewhere between $22 million and $117 million, attributable to the decline in the value of the equipment. Plaintiff theorizes that the requirement to provide adequate protection of the collateral could have been employed as a negotiating tool to exact concessions from the bankrupt airline, to the advantage of the bondholders.

Plaintiff's right to prosecute its claim is based on a literal application of General Obligations Law § 13-107 (1), which provides, in material part: "Unless expressly reserved in writing, a transfer of any bond shall vest in the transferee all claims or demands of the transferrer [sic], whether or not such

claims or demands are known to exist * * *(b) for damages against the trustee or depositary under any indenture under which such bond was issued or outstanding." Plaintiff therefore asserts a claim that inured to the benefit of the transferors (who were holders at the time of the alleged misfeasance or nonfeasance by the collateral trustees), from whom plaintiff acquired the bonds either directly or through its predecessors.

This case presents some obvious complications concerning the interplay with, and possible preemption by, Federal securities law and with the assessment of damages, which defendants contend are speculative, at best. As a general proposition, to recover damages as the result of some dereliction affecting the value of a security, Federal law requires a party to have been an owner of the security at the time of the asserted malfeasance (*In re Nucorp Energy Sec. Litig.*, 772 F2d 1486, 1490). Plaintiff acquired the subject bonds years after the alleged malpractice on which recovery is predicated. However, quite apart from the issue of plaintiff's standing to assert the claim of its transferors, as to which this Court offers no opinion, the underlying principle is pertinent to the question of damages.

The salient point is not the measure of plaintiff's injury but the very existence of injury. That a procedural statute might afford the right to maintain an action abrogates neither the necessity to demonstrate injury nor the duty to exercise due care with respect to the transaction for which recovery is sought. As the United States District Court for the Southern District of New York observed in dismissing plaintiff's Federal action:

> "Plaintiff purchased its certificates *after* all the alleged breaches transpired, *after* Bankruptcy Judge Balick rejected defendants' motion for adequate protection a second time, *after* the reorganization plan had been confirmed, and *after* the adverse consequences to certificate holders became painfully apparent. Market forces assured that the price plaintiff paid for certificates which would never be wholly redeemed reflected their diminished value. The injury was sustained by the sellers who parted with these certificates at a reduced price, not by plaintiff who purchased them at their post-bankruptcy value." (*Bluebird Partners v First Fid. Bank*, 896 F Supp 152, 157 [emphasis in original], *affd* 85 F3d 970.)

Courts that have considered the issue have declined to give literal application to General Obligations Law § 13-107 in cir-

cumstances similar to those at bar (*In re Nucorp Energy Sec. Litig., supra,* at 1492-1493 [9th Cir 1985], citing *Licht v Donaldson, Lufkin & Jenrette Sec. Corp.,* Sup Ct, NY County, No. 24560/82, Sept. 1, 1983, Myers, J., *affd* 100 AD2d 987, *lv denied* 63 NY2d 608 [State law claims against underwriter and auditor not automatically assigned to transferee]; *Lowry v Baltimore & Ohio R. R. Co.,* 629 F Supp 532, 533 [WD Pa 1986] [purchase subsequent to violation of State securities law does not effect automatic assignment of claim of transferee]). Construing the Trust Indenture Act (15 USC §§ 77aaa-77bbbb), the Ninth Circuit Court of Appeals noted that to permit assignment of a fraud claim to follow assignment of the security would effectively "remove the remedy from those * * * who were defrauded, by gratuitously giving it to those who were not defrauded and have suffered no injury under the securities law" (*In re Nucorp Energy Sec. Litig., supra,* at 1490). Construing the pendent State claims, the court held (at 1493) that, under New York law, "state law claims were not automatically transferred when the underlying security was sold." Relying on *Licht v Donaldson, Lufkin & Jenrette Sec. Corp. (supra)* and applying similar reasoning to that invoked by the Southern District Court in this case, the *Nucorp* court stated (*supra,* at 1493), "If causes of action were automatically transferred, defendants could be subject to double liability, and the transferees would recover damages even though they had suffered no injury, while the injured transferors would recover nothing." Affirming on the ground that Federal law controls the question of transferability of claims, the Second Circuit Court of Appeals noted that the policy of the Trust Indenture Act is to provide "a uniform scheme of federal regulation to protect those who are injured * * * not those who subsequently purchase securities at the reduced price" (*Bluebird Partners v First Fid. Bank, supra,* 85 F3d, at 974).

To expand upon this point, it warrants emphasis that plaintiff did not purchase an interest in the collateral underlying the bonds; plaintiff purchased the bonds in the secondary market, and this distinction is significant. The market price of a security is determined by forces that are only partly rational and which can be largely psychological, with the result that the financial condition of the enterprise is merely one component in the valuation of its securities in the marketplace. It is accepted, for purposes of a summary judgment motion if for no other reason, that the price of plaintiff's bonds was adversely affected by the decline in value of the underlying collateral.

However, the value of the collateral—or, more precisely, its perceived value—is merely one factor influencing the market price of the bonds. The extent to which the decline in price might have been augmented or diminished by market forces is impossible to assess. Thus, even if the decline in value of the collateral can be ascertained with precision, there is no non-speculative means of measuring the extent of any injury that plaintiff may have sustained, as reflected in the price of the bonds.

Furthermore, as the Federal courts cogently noted, it was the decline in the value of the bonds that enabled plaintiff to acquire them from the sellers at a steeply discounted price. Plaintiff, having availed itself of the opportunity presented by the impairment of the underlying collateral to its enrichment, cannot complain that it has sustained injury to a comparable degree. In other words, plaintiff cannot obtain a recovery that would be the equivalent of its actualized profit, attributable to the decline in the value of the collateral, because it would amount to double compensation.

As a final point, plaintiff does not allege that it acquired the subject bonds without knowledge of the pertinent facts. Even in the absence of knowledge, caveat emptor bars relief where a plaintiff has failed to exercise due care to ascertain that the underlying transaction was appropriate to its circumstances (*First Nationwide Bank v 965 Amsterdam*, 212 AD2d 469, 472; *Rodas v Manitaras*, 159 AD2d 341, 343; *see also*, *Stambovsky v Ackley*, 169 AD2d 254, 258). In the case of a transaction in the open market, this includes any risk that was known, or which should have been known, to the investor. Plaintiff's consistent reference to the debt instruments as "certificates" obscures their true character; bonds trading at such a substantial discount to face value are designated "junk" in the argot of the financial community. Guided by a sophisticated speculator, plaintiff entered into the purchases knowledgeably and with full appreciation of the attendant market risk it accepted in anticipation of a potential annualized return in the "upper twenties." Plaintiff does not allege any loss on the transactions. Furthermore, recovery is unavailable even in the face of actual loss where such loss results from an inherent market risk assumed by the investor (*National Union Fire Ins. Co. v Christopher Assocs.*, 257 AD2d 1, 12-13).

The operative question is not whether General Obligations Law § 13-107 effects an automatic assignment of a claim to a transferee, but whether the transferee, taking into account the

discounting action of the marketplace, has sustained a loss upon which recovery can be predicated. In the absence of demonstrated injury, plaintiff's complaint must be dismissed (*IGEN, Inc. v White*, 250 AD2d 463, 465-466, *lv denied* 92 NY2d 818 [legal malpractice]).

Accordingly, the order of the Supreme Court, New York County (Beatrice Shainswit, J.), entered July 12, 2000 (Appeal No. 1), upon reargument of a prior order granting defendants' motion for summary judgment, which, to the extent appealed from as limited by the briefs, denied the motion, should be reversed, on the law, without costs, summary judgment granted and the complaint dismissed. The Clerk is directed to enter judgment in favor of defendants-appellants dismissing the complaint. Appeal from order, same court and Justice, entered August 28, 2000 (Appeal No. 2), which, insofar as appealed from as limited by the briefs, denied the motion of defendant Summit Bank, sued herein as United Jersey Bank, for leave to amend its answer to assert lack of standing, should be dismissed as academic, without costs.

WILLIAMS, J. P., ELLERIN and LERNER, JJ., concur.

Order, Supreme Court, New York County, entered July 12, 2000, reversed, on the law, without costs, summary judgment granted and the complaint dismissed. Appeal from order, same court, entered August 28, 2000, dismissed as academic, without costs.