■ ARTHUR GLICK TRUCK SALES, INC., et al., Respondents, v SPADACCIA-RYAN-HAAS, INC., Appellant, et al., Defendants. [736 NYS2d 491] —Carpinello, J. Appeal from an order of the Supreme Court (Ledina, J.), entered April 4, 2001 in Sullivan County, which, inter alia, partially denied a motion by defendant Spadaccia-Ryan-Haas, Inc. for summary judgment dismissing the complaint against it.

Plaintiffs, owners and operators of a retail automobile and truck dealership, allege that for the better part of 10 years, beginning in 1989 or 1990, defendant Spadaccia-Ryan-Haas, Inc. (hereinafter defendant) acted as their insurance agent and broker in placing various policies of property insurance. According to plaintiffs, for "every single year" in that time period their policy limits "never changed." Documentary evidence in the record confirms that for policy periods January 1996 through January 1997 and January 1997 through January 1998, defendant procured insurance policies for plaintiffs containing coverages and limits consistent with defendant's own prior written recommendations (i.e., $800,000 on plaintiffs' commercial building, $550,000 for their business personal property and $450,000 for loss of business income).

Midway in this latter policy period, however, plaintiffs' president, dissatisfied with the issuing company's monthly reporting requirements, asked defendant to obtain alternate cover-

age from another company with less onerous reporting requirements. Defendant complied, obtaining new coverage from defendant Travelers Insurance Company effective June 1, 1997. Notably, on a written insurance binder issued by defendant, the limits of coverage remained exactly the same as in prior years (i.e., $800,000 on plaintiffs' building, $550,000 for contents and $450,000 for business income). Notwithstanding these amounts of coverage as specifically reflected on this binder, the policy was ultimately issued with lesser limits, namely, only $700,000 on the building, $500,000 for business personal property and $300,000 for loss of business income. While plaintiffs' president acknowledges receiving the policy in November or December 1997 (defendant claims that it was mailed in September 1997), he alleges that he was unaware that it was issued with coverages less than defendant's past written proposals, less than plaintiffs' prior years' policies and, most importantly, less than the June 1997 binder. On January 31, 1998, plaintiffs' business was destroyed by fire.

In this action grounded generally in theories of breach of contract and negligence, plaintiffs seek to hold defendant liable for the difference between the limits of insurance coverage reflected in the binder and those provided in the policy. Defendant sought summary judgment claiming that plaintiffs' receipt of the actual policy prior to the fire barred such a claim as a matter of law. Supreme Court found a question of fact as to whether plaintiffs' reliance on defendant's presumed obedience to their instructions regarding the amount of insurance coverage overcame the presumption of knowledge of the terms of a policy admittedly received by them prior to the fire. We agree with Supreme Court's analysis and, accordingly, affirm.

It is now well settled "that insurance agents have a common-law duty to obtain requested coverage for their clients within a reasonable time or inform the client of the inability to do so" (*Murphy v Kuhn*, 90 NY2d 266, 270). Where an agent agrees to obtain coverage but " 'fails to do so and neglects to give reasonable notice that such insurance has not been obtained, the agent becomes personally liable' " (*Humphrey & Vandervoort v C-Kitchens, Inc.*, 198 AD2d 840, 842, quoting *Reidman Agency v Meaott Constr. Corp.*, 90 AD2d 963, 964, *appeal dismissed* 58 NY2d 824). Here, there are sufficient facts to establish an agreement between plaintiffs and defendant that the latter would obtain insurance coverage in specific amounts. Moreover, it is undisputed that defendant knew that a binder had been issued to plaintiffs with specific coverages yet never

informed plaintiffs that this binder was itself inaccurate* or that the policy was issued with limits *different* than those recited in the binder.

None of the many cases cited by defendant in support of the general proposition that receipt of an insurance policy constitutes "conclusive, presumptive knowledge" of the terms of the policy (*see, e.g., M & E Mfg. Co. v Frank H. Reis, Inc.*, 258 AD2d 9; *Madhvani v Sheehan*, 234 AD2d 652; *Lieberthal v Agency Ins. Brokers*, 216 AD2d 816) are analogous to the facts of this case where plaintiffs may have been misled by defendant's conduct as to the amount of policy limits. Notably, the general rule that an insured is presumed to know the contents of a policy in its possession is not without exception (*see, Metzger v Aetna Ins. Co.*, 227 NY 411; *Brownstein v Travelers Cos.*, 235 AD2d 811). Under the circumstances of this case, we find no basis to distinguish between the affirmative misrepresentation by an insurance agent regarding policy coverages in *Kyes v Northbrook Prop. & Cas. Ins. Co.* (278 AD2d 736) and the failure to correct a clear misimpression created by defendant's issuance of a binder in the case at bar. Either circumstance is sufficient to overcome the otherwise presumptive knowledge of the terms of a policy received by the insured.

Mercure, J.P., Crew III, Mugglin and Rose, JJ., concur. Ordered that the order is affirmed, with costs.

---

* Defendant claims that the binder was issued "by mistake" in that it was erroneously issued with the insurance limits of the policy it was replacing even though the agent knew that the replacement policy was for lesser limits.