■ ONEIDA, LTD., et al., Respondents, v UTICA MUTUAL IN-SURANCE COMPANY, Appellant, and REPUBLIC WESTERN INSUR-ANCE COMPANY, Respondent. [694 NYS2d 221] —Mikoll, J. P. Appeal from an order of the Supreme Court (O'Brien, J.), entered October 6, 1998 in Madison County, which, *inter alia*, granted motions by plaintiffs and defendant Republic Western Insurance Company for summary judgment against defendant Utica Mutual Insurance Company.

This appeal stems from workplace injuries sustained by Darrin Ketchum and Raymond Ketchum (hereinafter the Ketchums), who were employees of plaintiff Camden Wire Company, Inc., a wholly owned subsidiary of plaintiff Oneida, Ltd. (hereinafter collectively referred to as Camden). The Ketchums were seriously injured when they became entangled in metal cable being unspooled by a strander machine. They commenced an action against the manufacturer of the machine, National Standard Company, Inc., which in turn commenced a third-party action against Camden seeking indemnification or contribution.

Faced with National's third-party claim, Camden commenced this declaratory judgment action to determine which of its two insurance carriers, defendant Republic Western Insurance Company or defendant Utica Mutual Insurance Company, was obligated to provide coverage for its potential liability thereon in excess of $1,000,000. Supreme Court determined that under the terms of its policy with Camden, Utica is obligated to provide such coverage. This appeal by Utica ensued.

Essential to the understanding and determination of this appeal is a brief overview of the two methods whereby an employer may comply with the financial security requirements of the Workers' Compensation Law. Under the Workers' Compensation Law, an employer is responsible for any workers' compensation benefits the law requires to be paid to its eligible employees (hereinafter statutory benefits). An employer must make provision for its potential liability for these statutory benefits by either (1) purchasing insurance from the State Insurance Fund or an insurance company authorized to provide such coverage (*see*, Workers' Compensation Law § 50 [1], [2]), or (2) with the approval of the Workers' Compensation Board, acting as a self-insurer pursuant to Workers' Compensation Law § 50 (3). Significant, and in this case dispositive, differences attend these two methods of compliance.

Where an employer elects to meet its obligation by purchas-

ing insurance pursuant to either Workers' Compensation Law § 50 (1) or (2), a "Standard Workers Compensation Insurance Policy" is issued. This standard policy requires unlimited coverage for an employer's obligation to pay statutory benefits. The standard policy also requires unlimited coverage for "employer's liability", i.e., liability for damages imposed on an employer by law, but excluding damages under the Workers' Compensation Law. In contrast to the requirement that the standard policy afford unlimited coverage for both statutory benefits and employer's liability, the rules and regulations governing employers who self-insure (12 NYCRR parts 315, 316) neither require unlimited excess coverage for statutory benefits nor mandate employer's liability coverage.

It is not disputed that Camden was at all relevant times a "self-insurer" pursuant to Workers' Compensation Law § 50 (3). Under its self-insurance program, as approved by the Chair of the Workers' Compensation Board, Camden was responsible for the first $400,000 of statutory workers' compensation benefits, secured by a letter of credit, and was required to cover its liability for statutory benefits in excess of $400,000 by purchasing an "excess reinsurance policy". Camden purchased this excess reinsurance policy from Republic. The Republic policy provided, in endorsement No. 1, unlimited coverage for Camden's statutory liability. It also provided, in endorsement No. 2, employer's liability coverage in the amount of $1,000,000. In addition, Camden purchased a "Commercial Umbrella Liability Policy" from Utica, providing coverage of up to $10,000,000 in excess of the limits of liability of any "underlying insurance".

Republic acknowledged its obligation to provide unlimited coverage for Camden's liability to the Ketchums for statutory benefits in excess of the $400,000 self-insured retention. It also acknowledged its obligation to provide employer's liability coverage up to $1,000,000 in the third-party action. However, Utica disclaimed any liability for coverage with respect to the third-party action, contending that New York law requires unlimited employer liability coverage and that consequently Republic's policy, notwithstanding its coverage of only $1,000,000, could not be so limited. Utica's arguments, premised on a fundamental misapprehension of the distinction between the requirements applicable to a standard policy of workers' compensation insurance and those governing self-insurers, were properly rejected by Supreme Court.

As a starting point, we note that for an annual premium of approximately $70,000, Utica issued a policy expressly provid-

ing that it would pay "those sums, in excess of the limits of liability under the terms of any 'underlying insurance,' that the insured becomes legally obligated to pay as damages because of 'injury' or 'wrongful act,' to which this insurance applies * * * or would apply but for the exhaustion of its applicable limits of insurance". On its "Supplemental Schedule of Underlying Insurance", the Utica policy specifically listed the Republic employer's liability policy with its $1,000,000 limit. Based upon the plain wording of the policy (*see, United States Fid. & Guar. Co. v Annunziata,* 67 NY2d 229, 232), Utica agreed to provide employer's liability coverage of up to $10,000,000 beyond the $1,000,000 coverage provided by Republic.

Aside from the plain language of the policy, the record contains abundant evidence vitiating Utica's claim that the employers' liability coverage under the Republic policy was, by operation of law, unlimited. Among this evidence are affidavits from Jack Leicher, Director of Workers' Compensation Regulatory Services and a 32-year employee of the Board, and Paul Altruda, Assistant Deputy Superintendent and Counsel for the Insurance Department and a 29-year employee thereof. Leicher, whose responsibilities include regulating self-insurers pursuant to Workers' Compensation Law § 50 (3), confirmed that the rules governing standard workers' compensation policies, including the requirement of unlimited coverage for both statutory benefits and employers' liability, do not apply to self-insurers. Noting that the regulations governing self-insurers do not mandate any employers' liability coverage, Leicher averred that Camden's self-insurance program, with its limited employer's liability coverage, was approved by the Workers' Compensation Board. Altruda's affidavit was to similar effect with respect to the distinction between standard workers' compensation policies and the requirements applicable to self-insurers. Moreover, Altruda confirmed the Insurance Department's position that even with respect to statutory benefits, coverage under a self-insurer's excess policy is of a different character than that afforded in the standard policy; according to the Insurance Department, the former "is not considered to be workers' compensation insurance since * * * no statutory workers' compensation benefits are paid directly to an injured employee under the excess policy".

Mercure, Peters, Carpinello and Graffeo, JJ., concur. Ordered that the order is affirmed, with one bill of costs. [*See,* 178 Misc 2d 572.]