■ LARRY AMBROSINO, Appellant, v EXCHANGE INSURANCE COMPANY et al., Respondents. [695 NYS2d 767] —Crew III, J. Appeal from an order of the Supreme Court (Ferradino, J.), entered September 17, 1998 in Fulton County, which granted defendants' motions for summary judgment dismissing the complaint.

Plaintiff is the owner of certain property located in the City of Gloversville, Fulton County, which he operated as a bowling alley from 1983 to 1989, at which time he sold the premises to a third party. In 1993, the mortgage holder contacted plaintiff, advised of the then-impending foreclosure and inquired as to whether plaintiff would be interested in reacquiring the property. Plaintiff subsequently assumed the underlying mortgage and, in conjunction therewith, contacted defendant Salvione Insurance Agency, an agent of defendant Exchange Insurance Company, about obtaining insurance coverage for the parcel. After speaking with John Samples, an agent employed by Salvione, plaintiff purchased a policy from Exchange insuring the subject premises for a period of one year commencing in September 1993.[1]

In March 1994, the roof of the bowling alley collapsed— purportedly due to the accumulation of ice and snow and/or a defective support beam. When plaintiff advised Salvione of this loss, he was informed that he was "not covered" as the policy in question excluded coverage for losses due to, *inter alia*, snow and ice. Plaintiff thereafter commenced this action against defendants alleging that they had negligently failed to procure appropriate insurance coverage for the property and, further, that defendants should be estopped from denying coverage based upon representations they allegedly made regarding the extent of the coverage provided and the repairs that had been made to the defective support beam. Following joinder of issue and discovery, defendants moved for summary judgment dismissing the complaint. Supreme Court granted the respective motions, prompting this appeal by plaintiff.

We affirm. As a general rule, "insurance agents have a common-law duty to obtain requested coverage for their clients within a reasonable time or inform the client of the inability to do so; however, they have no continuing duty to advise, guide or direct a client to obtain additional coverage" (*Murphy v Kuhn*, 90 NY2d 266, 270; *see*, *M & E Mfg. Co. v Reis, Inc.*, 258 AD2d 9, 11; *Hennessey v General Acc. Ins. Co.*, 257 AD2d 750, 751). In this regard, plaintiff testified at his examination before

---

1. Salvione apparently had provided insurance for the property's previous owners and plaintiff ultimately purchased the same policy.

trial that he requested the same insurance coverage as had been provided to the property's previous owners, and the record makes clear that this is precisely the coverage that plaintiff received. Additionally plaintiff, who admittedly never read the underlying policy, conceded that he did not initially request a specific type of coverage (except to advise Samples that "money was tight"), nor did he subsequently request any policy changes or upgrades (see, M & E Mfg. Co. v Reis, Inc., supra, at 11-12). Under such circumstances, it cannot seriously be argued that defendants failed to obtain appropriate coverage for plaintiff.

To the extent that plaintiff contends that he had a special relationship with defendants such that he was entitled to rely upon Samples' representations that he was purchasing a "good policy", we find this argument to be equally unpersuasive. Assuming, without deciding, that the "special relationship" theory applies in a customer-agent commercial insurance coverage setting such as the one at issue here,[2] we find, as a matter of law, that the record before us fails to demonstrate the existence of such a relationship between plaintiff and defendants. Even accepting that Samples indeed represented to plaintiff that he was purchasing a "good policy" and/or that the defective support beam had been repaired, there is nothing in the record to suggest that either Samples or Carl Golas, the loss control representative who inspected the premises for Exchange prior to the issuance of the policy, possessed any unique or specialized expertise regarding the structural aspect of the premises, or that either was in a special position of confidence with plaintiff such that plaintiff's reliance upon any representations made by them was justified (see, Murphy v Kuhn, supra, at 271; M & E Mfg. Co. v Reis, Inc., supra, at 12-13).

Finally, we find no merit to plaintiff's contention that defendants should be estopped from denying coverage. Again, even accepting that Samples misrepresented that the defective support beam had in fact been repaired and, further, that because such beam was encased in plywood plaintiff could not, simply by looking at the beam, verify that such repairs had been accomplished, the fact remains that plaintiff was aware that there had been problems with the support beam in the past and, significantly, observed that the floor around the base of the beam was sagging. As plaintiff readily could have ascertained the extent of the repairs made to and the condition of the beam itself by insisting that a structural inspection be

---

2. For a discussion of the limits of the "special relationship" theory advanced in Kimmell v Schaefer (89 NY2d 257), see Murphy v Kuhn (90 NY2d 266, supra) and M & E Mfg. Co. v Reis, Inc. (258 AD2d 9, supra).

performed prior to closing, which he admittedly did not do, Supreme Court correctly concluded that plaintiff could not meet the "lack of knowledge" prong of the equitable estoppel test (*see, e.g., Michaels v Travelers Indem. Co.*, 257 AD2d 828, 830). Plaintiff's remaining arguments have been examined and found to be lacking in merit.

Mikoll, J. P., Yesawich Jr., Peters and Mugglin, JJ., concur. Ordered that the order is affirmed, with costs.