[851 NE2d 1149, 818 NYS2d 798]

HOFFEND & SONS, INC., Appellant, v ROSE & KIERNAN, INC., et al., Respondents.

Argued April 26, 2006; decided June 8, 2006

## POINTS OF COUNSEL

*Hiscock & Barclay, LLP,* Rochester (*Anthony J. Piazza, Joseph A. Wilson* and *Paul A. Sanders* of counsel), for appellant. I. A policyholder's receipt of an insurance policy does not immunize a broker from claims of negligence. (*Murphy v Kuhn,* 90 NY2d 266; *Port Clyde Foods, Inc. v Holiday Syrups, Inc.,* 563 F Supp 893; *Blonsky v Allstate Ins. Co.,* 128 Misc 2d 981; *Hesse v Speece,* 278 AD2d 368; *Shenorock Shore Club v Rollins Agency,* 270 AD2d 330; *Kimmell v Schaefer,* 89 NY2d 257; *Catalanotto v Commercial Mut. Ins. Co.,* 285 AD2d 788, 97 NY2d 604; *Israelson v Williams,* 166 App Div 25, 215 NY 684; *Evvtex Co., Inc. v Hartley Cooper Assoc. Ltd.,* 911 F Supp 732; *Santaniello v Interboro Mut. Indem. Ins. Co.,* 267 AD2d 372.) II. The existence of the insurance broker's written insurance proposal and summary of insurance rebuts any preclusive presumptive knowledge of the terms of the policy. (*Laconte v Bashwinger Ins. Agency,* 305 AD2d 845; *Kyes v Northbrook Prop. & Cas. Ins. Co.,* 278 AD2d 736; *Arthur Glick Truck Sales v Spadaccia-Ryan-Haas, Inc.,* 290 AD2d 780; *Baseball Off. of Commr. v Marsh & McLennan,* 295 AD2d 73; *Murphy v Kuhn,* 90 NY2d 266; *Bell v O'Leary,* 744 F2d 1370; *Chase's Cigar Store v Stam Agency,* 281 AD2d 911; *Nicholas J. Masterpol, Inc. v Travelers Ins. Cos.,* 273 AD2d 817; *American Motorists Ins. Co. v Salvatore,* 102 AD2d 342.)

*Lustig & Brown, LLP,* Buffalo (*R. Scott Atwater, James C. Keidel, Jonathan Schapp* and *Randolph E. Sarnacki* of counsel), for respondents. I. The terms of the Travelers policy are binding on Hoffend & Sons, Inc. (*Metzger v Aetna Ins. Co.,* 227 NY 411; *Fiore v Oakwood Plaza Shopping Ctr.,* 78 NY2d 572; *Gillman v Chase Manhattan Bank,* 73 NY2d 1; *Matter of Level Export Corp. [Wolz, Aiken & Co.],* 305 NY 82; *Royal Indem. Co.*

*v Heller,* 256 NY 322; *Chase's Cigar Store v Stam Agency,* 281 AD2d 911; *Nicholas J. Masterpol, Inc. v Travelers Ins. Cos.,* 273 AD2d 817; *Laconte v Bashwinger Ins. Agency,* 305 AD2d 845; *Busker on Roof Ltd. Partnership Co. v Warrington,* 283 AD2d 376; *M & E Mfg. Co. v Frank H. Reis, Inc.,* 258 AD2d 9.) II. Rose & Kiernan, Inc., had no duty to procure coverage for appellant's loss because no specific request for coverage was made at any time. (*Murphy v Kuhn,* 90 NY2d 266; *Chase Scientific Research v NIA Group,* 96 NY2d 20; *Chaim v Benedict,* 216 AD2d 347; *Hjemdahl-Monsen v Faulkner,* 204 AD2d 516; *Wied v New York Cent. Mut. Fire Ins. Co.,* 208 AD2d 1132; *Capital Mercury Shirt Corp. v Arkwright Mut. Ins. Co.,* 195 AD2d 320; *Rogers v Urbanke,* 194 AD2d 1024; *Harnish v Naples & Assoc.,* 181 AD2d 1012; *Rotanelli v Madden,* 172 AD2d 815, 79 NY2d 754; *Erwig v Cook Agency,* 173 AD2d 439.) III. There is no evidence in the record of a special relationship between appellant and Rose & Kiernan, Inc. (*Murphy v Kuhn,* 90 NY2d 266; *W. Joseph McPhillips, Inc. v Ellis,* 8 AD3d 782; *Coventry Coating Corp. v Verlan Fire Ins. Co.,* 303 AD2d 164; *Sutton Park Dev. Corp. Trading Co. v Guerin & Guerin Agency,* 297 AD2d 430; *Busker on Roof Ltd. Partnership Co. v Warrington,* 283 AD2d 376; *Catalanotto v Commercial Mut. Ins. Co.,* 285 AD2d 788, 97 NY2d 604; *Chase's Cigar Store v Stam Agency,* 281 AD2d 911; *State Ins. Fund v Anderson Trucking,* 281 AD2d 838, 97 NY2d 606; *Damask Inc. v CNA Ins. Co.,* 269 AD2d 733; *Ambrosino v Exchange Ins. Co.,* 265 AD2d 627.) IV. The Appellate Division did not abrogate the common-law rule of *Murphy v Kuhn* (90 NY2d 266 [1997]) by applying the legal presumption that an insured which received its policy prior to the loss is charged with conclusive presumptive knowledge of the terms and conditions of its policy. (*Nicholas J. Masterpol, Inc. v Travelers Ins. Cos.,* 273 AD2d 817; *L.C.E.L. Collectibles v American Ins. Co.,* 228 AD2d 196; *McGarr v Guardian Life Ins. Co. of Am.,* 19 AD3d 254.) V. The cases relied upon by appellant are distinguishable and inapplicable. (*Laconte v Bashwinger Ins. Agency,* 305 AD2d 845; *Arthur Glick Truck Sales v Spadaccia-Ryan-Haas, Inc.,* 290 AD2d 780; *Baseball Off. of Commr. v Marsh & McLennan,* 295 AD2d 73; *Chase Scientific Research v NIA Group,* 96 NY2d 20; *Manes Org. v Meadowbrook-Richman, Inc.,* 2 AD3d 292; *Bell v O'Leary,* 744 F2d 1370; *Kyes v Northbrook Prop. & Cas. Ins. Co.,* 278 AD2d 736.) VI. Cases in other jurisdictions not applying New York law should be disregarded.

**OPINION OF THE COURT**

ROSENBLATT, J.

The appeal before us involves a suit by a policyholder against its insurance broker, contending that the broker did not obtain a policy that would have covered the loss involved. We hold that, as a matter of law, the policyholder did not establish that it made a specific request for the coverage in question or that it had a special relationship with the broker. Accordingly, we affirm the Appellate Division's dismissal of the complaint, although for different reasons.

Plaintiff Hoffend & Sons, Inc. is an Ontario County firm that does design and construction work for theater stages. Defendant Rose & Kiernan, Inc. (R & K) was Hoffend's insurance brokerage firm and defendant Mark Nickel's employer.

On December 11, 1998, R & K gave Hoffend a written proposal for insurance coverage for one year starting December 12, 1998. The proposal included descriptions of two policies relevant to this appeal. One was a "Blanket Installation Floater," or builders' risk policy, provided by Travelers Indemnity Co. of Illinois, to cover property damage to domestic construction projects generally. The second was a Great Northern "Foreign Liability Exporters' Package Policy," to cover general liability, non-owned automobile coverage and workers' compensation for foreign projects. It did not cover property damage incurred during construction abroad.

On December 22, Ruth Abate of R & K sent a letter to Dan DiPofi, Hoffend's chief financial officer, stating that the Travelers builders' risk policy would cover only property damage arising out of domestic projects. Foreign projects, she pointed out, should be discussed on a project-by-project basis.

The loss in question arose out of a foreign project. On February 8, 1999, Hoffend entered into a contract with an Argentine contractor, ORMAS, for a construction project in La Plata, Argentina. Hoffend was the subcontractor, providing the Argentine firm with materials, engineering and design expertise, as well as supervision. Donald Hoffend, a Hoffend principal, claims that he and R & K's Mark Nickel discussed the project at a December 11, 1998 meeting and that he made it clear to Nickel that the project should be "covered." Under the contract with ORMAS, Hoffend was obligated to acquire insurance for labor-related accidents, which was covered by the Great Northern exporters' package policy. The ORMAS contract, however, made

no mention of builders' insurance to cover property damage—the type of loss involved here.

In December 1999, R & K gave Hoffend a written insurance proposal for the period from December 12, 1999 to December 12, 2000, which included the date of the loss in question. The coverage was to be essentially the same as the previous year, but the proposal did not specifically state that foreign coverage under the Travelers blanket installation floater would still have to be negotiated on a project-by-project basis. Hoffend's Dan Di-Pofi testified that to simplify the bonding process he wanted to show R & K (who also handled the bonding) that most of Hoffend's La Plata work would take place in the United States. Di-Pofi did not recall anyone at R & K stating that the project would be covered for the type of loss involved here.

R & K's Ruth Abate also testified that under Hoffend's contract with ORMAS, the latter was to be responsible for the builders' risk insurance. The Travelers builders' risk policy clearly states that it only covered property in the United States, Puerto Rico and Canada. After the policy was issued, DiPofi and Donald Hoffend read it and did not contact R & K with any questions or changes.

The accident took place on October 5, 2000, when a lighting bridge at the project collapsed, damaging Hoffend's work and causing consequential damage. Hoffend filed claims with both Travelers and Great Northern. With a reservation of rights, Great Northern agreed to defend and indemnify Hoffend against third-party liability. Travelers disclaimed, citing the territorial limitation in its policy. As a result, the property damage in Argentina was not covered by either policy.

Hoffend seeks to impose liability on Nickel and R & K for having failed to acquire the coverage that Hoffend claims to have specifically requested, namely coverage for foreign projects under the Travelers builders' risk policy. Hoffend also asserts that it had a special relationship with Nickel, who reviewed Hoffend's operations, provided advice regarding insurance, bonding, banking, contracts and product development, and aided Hoffend in creating its business plan and corporate information statement. That special relationship, Hoffend argues, imposed on R & K a continuing duty to advise and guide Hoffend, obligating R & K to procure the additional coverage that would have included the loss in question.

The Appellate Division found questions of fact as to whether Hoffend had requested the specific coverage at issue, and

whether it had a special relationship with Nickel. The Court dismissed the complaint, however, because Hoffend had received the policy and was therefore charged with knowledge of its contents, thus precluding a cause of action for negligence or breach of contract against R & K and Nickel.

We see no question of fact as to either of Hoffend's contentions. The record shows that Donald Hoffend's recollection of events was vague at best, and in light of other proof in the record fails to raise a question of fact as to a request for the specific coverage involved. He admitted that he could not remember asking for additional coverage for any specific project at any of the annual meetings with R & K. Donald Hoffend did not identify specific coverage obtained for any individual project and could not remember any specific conversations on the subject. Moreover, he could provide no details of discussion between the December 1998 meeting regarding the insurance proposal and the February 1999 execution of the ORMAS contract, nor could he say if Nickel had assured him as to specific coverage for any aspect of the Argentine project.

On the other hand, DiPofi recalled telling R & K that Hoffend would only be a supplier for the Argentine firm and not involved in the installation. He could not remember ever asking R & K for full coverage for all losses related to the project. Further, he stated that nobody at R & K had ever represented that the Travelers policy would cover any property losses abroad related to the project.

R & K made it clear to Hoffend that foreign projects would not be covered under the Travelers policy and that coverage of that type would have to be negotiated case by case. In R & K's December 22, 1998 letter to Hoffend, Abate emphasized that the relevant policy would "cover [Hoffend's] U.S. projects only" and that foreign coverage remained open for discussion. In the face of this unambiguous writing, Donald Hoffend's assertions as to what occurred at later meetings are too vague to establish a specific request for coverage of the particular risk involved. His recollection "that we are covered" is insufficient to impose liability on R & K.

*Murphy v Kuhn* (90 NY2d 266 [1997]) is on point. There, we held that a broker has a common-law duty either to obtain the coverage that a customer specifically requests or to inform the customer of an inability to do so. Although Hoffend contends it made a request sufficiently specific to trigger that duty, the rec-

ord does not support its assertion. A general request for coverage will not satisfy the requirement of a specific request for a certain type of coverage.

Moreover, the broker in *Murphy* handled the policyholder's personal insurance needs for 13 years and served as the company's insurance broker for over three decades. We held there was no special relationship in that case and we decline to hold that one exists here. In this case, the services provided by Nickel in his capacity as an R & K employee did not rise to the level of a special relationship. Hoffend, a sophisticated commercial entity, did not compensate R & K for its insurance advice apart from its payment of premiums, nor did it delegate its insurance decision-making responsibility to R & K. In short, as in any ordinary broker-client relationship, Hoffend told R & K in general what insurance Hoffend had decided to purchase. It did not ask R & K what that insurance should be.

Lastly, in light of our holdings on the specific request and special relationship issues, we need not consider whether, as the Appellate Division held, Hoffend was barred from recovery because, having received and had an opportunity to read the policy, it requested no changes in it.

Accordingly, the order of the Appellate Division should be affirmed, insofar as appealed from, with costs.

Chief Judge KAYE and Judges G.B. SMITH, CIPARICK, GRAFFEO, READ and R.S. SMITH concur.

Order, insofar as appealed from, affirmed, with costs.