■ WESTERN BUILDING RESTORATION COMPANY, INC., Respondent-Appellant, v LOVELL SAFETY MANAGEMENT COMPANY, LLC, Appellant-Respondent. [876 NYS2d 733]—

McCarthy, J. Cross appeals from an order of the Supreme Court (Lynch, J.), entered September 2, 2008 in Albany County, which, among other things, partially denied defendant's motion for summary judgment.

Plaintiff, a wholly owned subsidiary of a Massachusetts corporation, is a construction company with an office in New York. In December 1989, it purchased a workers' compensation and employers' liability policy through the State Insurance Fund (hereinafter Fund) and four years later became a member of a safety group consisting of like construction companies (*see* 12 NYCRR 451.1, 451.2, 451.7). Defendant was that safety group's manager (*see* 12 NYCRR 451.5).

In early 2002, plaintiff began work on a project in Massachusetts. During the course of this project, plaintiff obtained,

through defendant, a certificate of workers' compensation insurance. Plaintiff was named as the policyholder on the certificate and another New York company, the general contractor on the project, was named as the "certificate holder."[1] When defendant issued the certificate, it was not made aware that the project was located in Massachusetts.

According to plaintiff's office manager, during the fall of 2002, she contacted one of defendant's underwriters and inquired if employees hired from a Massachusetts trade union for the Massachusetts project were covered under the workers' compensation policy. According to the office manager, during their brief conversation, which she did not document in any substantive fashion, she was told that such employees were covered.[2] In December 2002, a renewal certificate of insurance was issued for the project. Like the first, this certificate also clearly states that plaintiff had workers' compensation insurance through the Fund with respect to all operations in New York.

In April 2003, a Massachusetts resident hired to work on the project was injured. Defendant refused to process his claim for workers' compensation coverage on the ground that plaintiff's workers' compensation policy did not cover out-of-state employees. Plaintiff then commenced this action against defendant alleging eight claims, including breach of contract, negligence, estoppel, negligent misrepresentation, fraud and a violation of General Business Law § 349. Defendant's motion for summary judgment dismissing all eight causes of action was partially denied by Supreme Court, prompting this appeal by defendant. Plaintiff cross-appeals, arguing that the court improperly dismissed its General Business Law § 349 claim. We agree with defendant's contention that the complaint should have been dismissed in its entirety.

First, plaintiff has not provided prima facie evidence of a contract between these parties sufficient to sustain the first cause of action (alleging breach of contract) or the second cause of action (alleging breach of implied covenant of good faith and fair dealing). With respect to the breach of contract claim,

---

**1.** The certificate of insurance clearly states that plaintiff is insured with the Fund "COVERING THE ENTIRE OBLIGATION OF [PLAINTIFF] FOR WORKERS' COMPENSATION UNDER THE NEW YORK WORKERS' COMPENSATION LAW *WITH RESPECT TO ALL OPERATIONS IN THE STATE OF NEW YORK*, EXCEPT AS INDICATED BELOW" (emphasis added). No relevant exclusion was thereafter indicated.

**2.** Defendant's underwriter denied ever having a conversation with plaintiff's office manager, or anyone else employed by plaintiff, in which he stated, in sum or substance, that the subject policy would provide coverage to non-New York employees who suffer injury outside of New York.

■■■■■■■■■■

plaintiff alleges in the complaint that, "[i]n exchange for valuable consideration from [it]," defendant agreed to provide a certificate of insurance and/or insurance policy that would provide workers' compensation coverage for employees on the Massachusetts project (no other contract is alleged in the complaint and no contract is identified in plaintiff's response to defendant's interrogatories). To the extent that plaintiff is relying on either the certificate of insurance and/or insurance policy to support the first two causes of action, we find that neither of these documents gave rise to a contractual relationship between plaintiff and defendant. Fundamentally, the insurance policy, procured long before plaintiff became a member of defendant and renewed annually without defendant's input, is clearly a contract between plaintiff and the Fund only (*see generally Matter of Covert*, 97 NY2d 68, 76 [2001]; *see also* 1 Couch on Insurance 3d § 1:6; 68A NY Jur 2d, Insurance §§ 516, 582). A certificate of insurance is merely evidence of insurance—here, for the sake of the "certificate holder"—and is not itself a contract (*see Bucon, Inc. v Pennsylvania Mfg. Assn. Ins. Co.*, 151 AD2d 207, 210 [1989]; *Blue Cross of Northeastern N. Y. v Ayotte*, 35 AD2d 258, 260 [1970]; *see also* 3 Couch on Insurance 3d § 40:30; 68A NY Jur 2d, Insurance § 683). In the absence of a contract between these parties, the first two causes of action should have been dismissed.

Turning to the negligence causes of action, the issue of duty is dispositive. To this end, we note that existence and scope of an alleged tortfeasor's duty is a decision for the court (*see Palka v Servicemaster Mgt. Servs. Corp.*, 83 NY2d 579, 585 [1994]). Here, plaintiff alleges in the complaint that defendant had a duty to provide it with a certificate of insurance and/or a policy providing workers' compensation coverage for its employees on the subject project (third cause of action) and a duty to inform that it never actually provided same (fourth cause of action). These duties are premised on the notion that defendant served in the capacity as plaintiff's insurance agent and/or broker.

We note, however, that the duties of defendant, as a safety group manager, are defined by regulation and nothing within the regulatory scheme assigns safety group managers with the responsibility of procuring workers' compensation coverage or providing advice or counsel with respect to the adequacy or limits of coverage (*see* 12 NYCRR 451.5 [c]). In short, the regulatory scheme does not remotely establish that safety group managers assume the role or are somehow akin to an insurance broker or agent.

In addition to the well-defined and circumscribed role of safety

group managers outlined under the regulations, plaintiff failed to submit any proof establishing that defendant, in any event, went beyond these regulatory duties by assuming a role akin to that of insurance broker or agent. While plaintiff's corporate safety director opined that he considered defendant to be the equivalent of an "insurance broker," he pointed to no duty or task performed by defendant over the years to adequately establish that it actually served in this capacity. To the contrary, he testified that defendant provided guidance on claims management and safety issues (duties entirely consistent with those outlined under the regulation). Moreover, none of defendant's essential duties as described by plaintiff's office manager suggested an agent or broker relationship. In fact, according to the office manager, the alleged telephone conversation with defendant's underwriter concerning the scope of coverage on the subject policy was an anomaly, that is, it was the only such call that she ever placed in her over two decades of service with plaintiff.

In addition, the corporate safety director candidly acknowledged that defendant played no role in plaintiff's decision to secure the subject policy or to renew it annually. Rather, these decisions were made by plaintiff's parent company. Notably, annual renewal decisions were made by the parent company with the assistance of a Massachusetts insurance broker.[3] Because defendant did not serve in the capacity of plaintiff's insurance agent or broker (cf. *Kyes v Northbrook Prop. & Cas. Ins. Co.,* 278 AD2d 736, 737 [2000]), it had no legally cognizable duty to provide plaintiff with workers' compensation coverage or to inform plaintiff about the adequacy or limits of such coverage. Moreover, the alleged misrepresentation in the sole telephone call about coverage does not create a duty where none otherwise existed and is thus insufficient to impose liability under these circumstances. Accordingly, the third and fourth causes of action sounding in negligence should have been dismissed.

Next, we find that the absence of an insurance agent/broker relationship between these parties completely negates a legally cognizable claim of reasonable and foreseeable reliance on the alleged misrepresentation that there was coverage such that plaintiff's fifth, sixth and seventh causes of action—the negligent misrepresentation, estoppel and fraud claims—should have been dismissed (*see e.g. Hoffend & Sons, Inc. v Rose & Kiernan, Inc.,* 19 AD3d 1056, 1058 [2005], *affd* 7 NY3d 152 [2006]; *H & R Project Assoc. v City of Syracuse,* 289 AD2d 967,

**3.** Of note, this broker was aware that plaintiff conducted operations outside of New York.

969 [2001]; *Ambrosino v Exchange Ins. Co.*, 265 AD2d 627, 628 [1999]). In any event, the relationship between these parties—safety group member and safety group manager—also falls well short of the threshold required to be deemed a "special relationship" (*Kimmell v Schaefer*, 89 NY2d 257, 260 [1996]) for the purpose of establishing the negligence and negligent misrepresentation claims (*see Hoffend & Sons, Inc. v Rose & Kiernan, Inc.*, 7 NY3d 152, 158 [2006]; *Murphy v Kuhn*, 90 NY2d 266, 270-271 [1997]; *Ambrosino v Exchange Ins. Co.*, 265 AD2d at 628; *M & E Mfg. Co. v Frank H. Reis, Inc.*, 258 AD2d 9, 11 [1999]).

Furthermore, even assuming defendant acted as plaintiff's insurance agent and that defendant's underwriter misrepresented the scope of coverage, plaintiff's claims are defeated by the clear and unequivocal limits of the workers' compensation provisions of the policy to "workplaces in *the state of New York*"—a limit of which, we note, plaintiff is conclusively presumed to have knowledge and to have assented (*see Catskill Mtn. Mech., LLC v Marshall & Sterling Upstate, Inc.*, 51 AD3d 1182, 1184-1185 [2008]; *Laconte v Bashwinger Ins. Agency*, 305 AD2d 845, 846 [2003]; *Catalanotto v Commercial Mut. Ins. Co.*, 285 AD2d 788, 790-791 [2001], *lv denied* 97 NY2d 604 [2001]; *Ambrosino v Exchange Ins. Co.*, 265 AD2d at 628-629; *M & E Mfg. Co. v Frank H. Reis, Inc.*, 258 AD2d at 12; *Madhvani v Sheehan*, 234 AD2d 652, 654-655 [1996]).[4] The four-page document states on page one, "THIS IS YOUR POLICY. PLEASE READ IT." Under the first section, entitled "GENERAL SECTION," there is a paragraph denominated "Locations" which clearly states in its entirety that "[t]his policy covers all of your workplaces *in the state of New York*, except as excluded by endorsement" (emphasis added). Part One of the policy governs workers' compensation insurance and contains no exclusions. Part Two of the policy governs employers' liability insurance and does contain exclusions.[5]

Plaintiff argues that issues of fact regarding the interpreta-

---

4. Significantly, it is undisputed that plaintiff neither contacted defendant's underwriter for clarification of coverage *after* reviewing its policy (*cf. Kyes v Northbrook Prop. & Cas. Ins. Co.*, 278 AD2d at 736) nor made a specific request for coverage, factors found particularly relevant by this Court in granting summary judgment to agents in like scenarios (*see Catskill Mtn. Mech., LLC v Marshall & Sterling Upstate, Inc.*, 51 AD3d at 1184-1185; *M & E Mfg. Co. v Frank H. Reis, Inc.*, 258 AD2d at 11-12; *Madhvani v Sheehan*, 234 AD2d at 654).

5. As relevant here, the employers' liability insurance portion of the policy has the following exclusion: "This insurance does not cover . . . bodily injury occurring outside the state of New York. This exclusion does not apply to

tion of the policy have been raised because the phrase "regular New York employees" (*see* n 5, *supra*) is ambiguous and open to interpretation. To this end, plaintiff claims that it "reasonably interpreted the [p]olicy as covering workers . . . working on out of state projects." For a variety of reasons, these claims do not withstand close scrutiny and are thus insufficient to avoid dismissal of the action.

First and foremost, the subject policy is a workers' compensation *and* employers' liability contract (*see generally Preserver Ins. Co. v Ryba*, 10 NY3d 635 [2008]; *Continental Ins. Co. v State of New York*, 99 NY2d 196 [2002]).[6] The phrase "regular New York employees" is contained only within Part Two, governing employers' liability coverage (*see Preserver Ins. Co. v Ryba*, 10 NY3d at 643; *compare Continental Ins. Co. v State of New York*, 99 NY2d at 200-201). Significantly, this dispute centers on plaintiff's workers' compensation coverage, which was limited to "workplaces" in New York and provided coverage under the New York State Workers' Compensation Law only. Notably, plaintiff makes no claim that any aspect of Part One of the policy is unclear or ambiguous. Moreover, the project "workplace" here was clearly located outside of New York.[7]

Putting aside the legal nuance between these two sections of the policy, we next point out that plaintiff submitted no evidence in opposition to defendant's summary judgment motion that anyone within its employ, or the employ of its parent company, actually read the policy at any time before the subject incident and thus interpreted the phrase "regular New York employees" in the manner *now* espoused. To the contrary, plaintiff's corporate safety director since 1991 candidly acknowledged that he never saw or read the policy until *after* the subject accident. While he indeed believed that the subject policy covered out-of-state operations, his basis for this belief did *not* come from the policy language itself but rather from plaintiff's "history" of conducting out-of-state operations,

---

bodily injury sustained by your regular New York employees while temporarily outside the state of New York."

**6.** Employers' liability in the context of policies issued by the Fund has been defined by this Court as "liability for damages imposed on an employer by law, but excluding damages under the Workers' Compensation Law" (*Oneida, Ltd. v Utica Mut. Ins. Co.*, 263 AD2d 825, 826 [1999]).

**7.** Additionally, the injured employee never pursued a claim for workers' compensation coverage in New York or sought benefits under New York law; rather, he received coverage under the Massachusetts workers' compensation law. Nothing within the subject workers' compensation policy obligates the Fund itself to cover damages to plaintiff stemming from the award of these out-of-state benefits (*see Safespan Platform Sys., Inc. v State Ins. Fund*, 21 AD3d 1373 [2005], *affg* 20 Misc 3d 1117[A], 2004 NY Slip Op 51927[U] [2004]).

obtaining certificates of insurance and paying payroll premiums without ever being advised that it did not have coverage in such instances. Thus, while plaintiff *now* claims that the phrase "regular New York employees" is ambiguous and open to interpretation,[8] the asserted ambiguity and now-espoused interpretation clearly did not guide its actions, or inactions, over the years.

Next, and again assuming that the employers' liability provision of the policy has some relevance here and further putting aside the fact that no one within plaintiff's employ could have been confused by language in a policy that was never read, we find the disputed phrase, when read in complete context, is not ambiguous here. The complete sentence provides that the "exclusion does not apply to bodily injury sustained *by your regular New York employees while temporarily outside the state of New York*" (emphasis added). Thus, this language unambiguously extends employers' liability coverage if two conditions exist, namely, that an injured worker is a "regular New York employee[ ]" and further that such employee is "temporarily" outside of New York. Plaintiff seemingly ignores this latter phrase in pursuing its argument that the policy language is ambiguous. Here, the record firmly establishes that the injured worker was a Massachusetts resident hired for this job "only" (i.e., no future employment with plaintiff was contemplated) and he had never previously worked for plaintiff. Thus, any alleged ambiguity in the excised phrase "regular New York employees" is sophistry here because it cannot reasonably be claimed that the subject worker here was injured while temporarily outside of New York.

Finally, as to plaintiff's cross appeal, we find that Supreme Court properly dismissed the General Business Law § 349 cause of action as plaintiff wholly failed to demonstrate that defendant's alleged deceptive business practices had a broad impact on consumers at large (*see Oswego Laborers' Local 214 Pension Fund v Marine Midland Bank*, 85 NY2d 20, 24-25 [1995]).

Cardona, P.J., Mercure, Malone Jr. and Kavanagh, JJ., concur. Ordered that the order is modified, on the law, with costs to defendant, by reversing so much thereof as partially denied defendant's motion; motion granted in its entirety, summary judgment awarded to defendant and complaint dismissed; and, as so modified, affirmed.

---

**8.** According to plaintiff, because the injured Massachusetts worker faxed employment application documents to its New York office and was paid directly by plaintiff from its checking account, this worker "was *probably* a 'regular New York employee' within the meaning of the policy" (emphasis added).