09-2794-cv
Ohio Casualty Ins. Co. v. Transcon. Ins. Co.

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan Courthouse, 500 Pearl Street, in the City of New York, on the 14th day of April, two thousand ten.

Present:
            ROBERT A. KATZMANN,
            PETER W. HALL,
                        *Circuit Judges*,
            JED S. RAKOFF,
                        *District Judge.*[*]

_____

OHIO CASUALTY INSURANCE COMPANY,

            *Plaintiff-Appellant*,

                        v.                                    No. 09-2794-cv

TRANSCONTINENTAL INSURANCE COMPANY,

            *Defendant-Appellee*.

_____

---

[*] Judge Jed S. Rakoff, of the United States District Court for the Southern District of New York, sitting by designation.

For Plaintiff-Appellant:    MICHAEL P. KANDLER, Callan, Koster, Brady & Brennan, LLP, New York, NY

For Defendant-Appellee:    JOSEPH D'AMBROSIO, (Andrew I. Mandelbaum, *on the brief*), Ford Marrin Esposito Witmeyer & Gleser, LLP, New York, NY

_____

Appeal from the United States District Court for the Southern District of New York (Jones, *J.*).

**ON CONSIDERATION WHEREOF**, it is hereby **ORDERED**, **ADJUDGED**, and **DECREED** that the judgment of the District Court be and hereby is **AFFIRMED**.

Plaintiff-Appellant Ohio Casualty Insurance Company ("Ohio Casualty") appeals from an order of the District Court for the Southern District of New York (Jones, *J.*), entered May 26, 2009, denying Ohio Casualty's motion for summary judgment and granting summary judgment to Defendant-Appellee Transcontinental Insurance Company ("Transcontinental"). Ohio Casualty brought an action for indemnification against Transcontinental, alleging that, under the terms of various insurance policies issued by the parties, Transcontinental was responsible for paying the $6.07 million Ohio Casualty contributed towards settlement of a wrongful death lawsuit. Ohio Casualty also alleged that Transcontinental breached its fiduciary duty and acted in bad faith during the settlement negotiations. The district court found that the antisubrogation doctrine barred Ohio Casualty's indemnification claim and found that Ohio Casualty had not demonstrated that Transcontinental had acted with gross disregard to Ohio Casualty's interests during settlement negotiations. We assume the parties' familiarity with the underlying facts and procedural history of the case.

This court reviews a district court's grant of summary judgment *de novo*, applying the same standards as the district court. *Belfi v. Prendergast*, 191 F.3d 129, 135 (2d Cir. 1999). Summary judgment is appropriate only where the parties' submissions "show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). We may affirm the judgment of the district court on any ground appearing in the record. *Shumway v. United Parcel Serv.*, 118 F.3d 60, 63 (2d Cir. 1997).

This suit arises from a June 22, 1999, incident in which Richard Wersan, an employee of Wildman & Bernhardt Construction, Inc. ("Wildman"), sustained bodily injuries that led to his death while working at a construction site located on the property of Downtown Development, LLC ("Downtown") in New York City. Wersan's survivors brought an action ("the underlying action") against Downtown seeking damages for personal injury, wrongful death, and pecuniary loss. Downtown subsequently impleaded Wildman, seeking equitable contribution, common law indemnification, and contractual indemnification. The third-party complaint alleged that Downtown was not negligent with respect to Wersan's injuries and that all of the damages claimed should be passed through to Wildman. The parties to this appeal do not contest that liability in the underlying action rests with Wildman. Ultimately, the underlying action was settled for $8.8 million. In funding the settlement, Transcontinental paid $1 million and Ohio Casualty paid $6.07 million.[1]

---

[1] The remainder of the settlement was paid on behalf of secondary defendants not involved in the present matter.

Both Ohio Casualty and Transcontinental had issued insurance policies to Wildman, naming Downtown as an "additional insured" on two of them. Ohio Casualty's indemnification claim in this case depends on its ability to "step into the shoes" of Downtown and demand indemnification from Transcontinental as Wildman's primary insurer. "Subrogation . . . entitles an insurer to 'stand in the shoes' of its insured to seek indemnification from third parties whose wrongdoing has caused a loss for which the insurer is bound to reimburse." *N. Star Reins. Corp. v. Cont'l Ins. Co.*, 82 N.Y.2d 281, 294 (1993). The New York Court of Appeals has made clear that "[a]n insurer, however, has no right of subrogation against its own insured for a claim arising from the very risk for which the insured was covered." *Id.* at 294.

Ohio Casualty issued an umbrella liability insurance policy to Wildman ("the umbrella policy") which provides $9 million of coverage in excess of the stated limits of the primary policies listed on its "Schedule of Underlying Policies." That schedule includes the two policies Transcontinental issued to Wildman, a "Commercial General Liability" policy with a $1 million limit ("the general liability policy"), and a "Workers' Compensation/Employers Liability" insurance policy ("the WC/EL policy") with a $100,000 per-occurrence limit. The employers' liability policy provides Wildman with two types of insurance coverage: (1) for benefits it might become obligated to pay to its employees under New York Worker's Compensation Law and (2) for common law contribution or indemnity claims that might be asserted against it in court as a result of injuries suffered by employees. Downtown is listed as an "additional insured" on both Ohio Casualty's umbrella policy and Transcontinental's general liability policies, but not on Transcontinental's WC/EL liability policy.

-4-

The question before us, then, is whether, via the umbrella policy, Ohio Casualty insured Wildman for the risk at issue—the liability incurred as a result of Wersan's death ("the Wersan liability"). That question can only be answered through interpretation of an endorsement in the umbrella policy, which states, in full, that "[a]ny reference to Workers' Compensation or Employers' Liability is strictly applicable to employees who are not subject to New York Workers' Compensation Law." Ohio Casualty asserts that this endorsement excludes the Wersan liability from coverage under the umbrella policy.

The district court, however, read the endorsement to exclude only claims "brought pursuant to the Workers' Compensation Law." *Ohio Cas. Ins. Co. v. Transcon. Ins. Co.*, No. 05-cv-6432, op. at 9 (S.D.N.Y. May 26, 2009). Thus, the district court reasoned, because Wersan's claims were not brought under the Workers' Compensation Law, the endorsement—and Ohio Casualty's umbrella policy in general—did not exclude the Wersan liability from coverage. *Id.* at 9-10. Transcontinental reiterates this interpretation in its brief to this Court.

We agree with the district court that the endorsement does not exclude coverage for the Wersan liability, but on a different reading of the relevant language in the policy – a reading that is informed by an analysis of New York law that is different from the district court's. The district court interpreted the New York endorsement in the umbrella policy to exclude "only those claims that arise under the Workers' Compensation law (those claims for which the WC/EL Policy provides limitless primary coverage)." *Id.* at 9 n.6. We agree with the district court that the New York endorsement was applicable to the coverage under the policy because of

New York's limitless coverage requirements, and it should be interpreted in that context. As we read the language of the endorsement, the umbrella policy does not provide coverage for employers' liability or workers' compensation claims to the extent those claims: (1) would be covered by the WC/EL policy; *and* (2) arise with respect to employees who are covered by the New York Workers' Compensation Law.

This reading is consonant with New York law regarding insurance for employment-related risks. Under New York law, insurers are not permitted to limit their coverage for workers' compensation *or* employers' liability, which are distinct concepts. *See Oneida Ltd. v. Utica Mut. Ins. Co.*, 263 A.D.2d 825, 826 (3d Dep't 1999) (noting that, under New York law, a standard workers' compensation policy "requires unlimited coverage for an employer's obligation to pay statutory benefits[,] [i.e., benefits under the Workers' Compensation Law] . . . [and] 'employer's liability', i.e., liability for damages imposed on an employer by law [other than] damages under the Workers' Compensation Law."). Under Ohio Casualty's theory it is reasonable to read the endorsement in its umbrella policy as excluding workers' compensation and employers' liability coverage for all employees subject to New York Workers' Compensation Law, because, by law, the employers' liability policy issued by Transcontinental provides unlimited coverage in this regard. Pl. Br. 5-6. The district court accepted Ohio Casualty's argument that coverage for claims under the New York Workers' Compensation Law must be unlimited, and on that basis it interpreted the New York endorsement in the umbrella policy as addressing such claims. What the district court did not appreciate is that New York law requires unlimited coverage for claims arising not only for

-6-

damages under the Workers' Compensation Law but also for other "damages imposed on an employer by law" with respect to employees who are covered by the Workers' Compensation Law. These latter claims include those for common law indemnification, and the third-party complaint by Downtown against Wildman in the underlying action contained, among other things, common law indemnification claims, which would also be excluded by the New York endorsement's reference to employers' liability.

Nonetheless, we affirm the judgment of the district court because the settlement in the underlying action also served to settle *contractual* indemnification claims between Downtown and Wildman. Damages imposed by a contractual obligation are different from "damages imposed on an employer by *law*," and because contractual indemnity claims would therefore not be subject to New York's limitless coverage requirement and are not covered by the WC/EL policy, the New York endorsement in the umbrella policy does not apply to exclude them from coverage. Any contractual indemnity claims against Wildman in excess of the $1 million coverage provided by the general liability policy would therefore be covered only by the umbrella policy. The resulting coverage scheme thus makes perfect sense both internally and in the context of New York law: (1) Transcontinental's general liability policy covers, *inter alia*, contract-based claims resulting from bodily injury up to the $1 million limit, but not other claims resulting from bodily injury; (2) Transcontinental's WC/EL policy provides unlimited coverage for workers' compensation claims and for employers' liability claims (except employers' liability arising from contractual obligation); and (3) Ohio Casualty's umbrella policy provides coverage

-7-

up to its $9 million limit for any liability not covered by the other two policies, including any contractual indemnification claims not fully paid for by the general liability policy.

As the New York Court of Appeals explained in *North Star*, absent the antisubrogation rule, a "mutual insurer, as subrogee of the owner, c[ould] fashion the litigation so as to minimize its liability." 82 N.Y.2d at 296. Specifically, "[b]y failing to assert a contractual indemnification claim on the owner's behalf, the insurer c[ould] trigger coverage under other insurance policies ... such as a workers' compensation . . . policy." *Id.* Here, the antisubrogation rule prohibits Ohio Casualty from pursuing the present litigation as though the contractual claims between its two insureds did not exist. This reasoning is consistent with that employed by the Appellate Division in *Maksymowicz v. New York City Bd. of Educ.*, 232 A.D.2d 223 (1st Dep't 1996). In that case, the owners' third-party complaint against the employer was dismissed as barred by the antisubrogation rule. *Id.* at 223. The owners' insurer, attempting to subrogate through the owners, argued that

> the antisubrogation rule does not apply since the policy excludes coverage for work-related claims by an employee of the employer and that indemnity against the employer, therefore, is not being sought for the very risk for which the employer was covered under the policy, but rather for a risk for which the employer was covered under another policy with another insurer, namely, its workers' compensation policy.

*Id.* at 223-24. The Appellate Division rejected the insurer's argument, noting that there was (just as there is in this case) an "insured contract" clause stating that the exclusion for employees' injuries did not apply to liability assumed through contract, and that the third-party action was an attempt to avoid that coverage. *Id.* at 224; *see also Morales v. City of New York*, 239 A.D.2d 566, 567 (2d Dep't 1997) ("insured contract" clause in general liability policy and "written

-8-

contract" exception to exclusion in excess policy resulted in claim for indemnification being a claim against insurer's own insured, and thus barred by antisubrogation rule). The antisubrogation rule stands as a complete bar to recovery; this is true even if we view Ohio Casualty's claim, as it suggests, as one for equitable contribution, because New York law does not distinguish, for purposes of the antisubrogation rule, between subrogation claims brought directly against an insured and claims brought against a common insurer. *See Washington v. New York City Indus. Dev. Agency*, 215 A.D.2d 297, 299 (1st Dep't 1995); *Avalanche Wrecking Corp. v. New York State Ins. Fund*, 211 A.D.2d 551, 552-53 (1st Dep't 1995).

Ohio Casualty also purports to appeal the district court's grant of summary judgment as to the claim for breach of fiduciary duty and bad faith. In its briefs, however, Ohio Casualty only cites general legal propositions regarding an insurance carrier's obligation to exercise good faith with respect to both its insured and an excess insurer. Ohio Casualty offers no evidence that Transcontinental has done anything more than defend its position that it was not obligated to contribute more than $1 million to the settlement. We affirm the district court's dismissal of this claim as well.

Accordingly, having considered all of the parties' arguments, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, CLERK

-9-