# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

**320**

**CA 11-02133**

PRESENT: SCUDDER, P.J., SMITH, CARNI, AND SCONIERS, JJ.

---

DEBORAH VOSS, PROP-CO, LLC, CLASSI PEOPLE, INC.,
DOING BUSINESS AS SERTINO'S CAFÉ AND DREAM
PEOPLE, INC., DOING BUSINESS AS SHIVER MODEL,
PLAINTIFFS-APPELLANTS,

V                                    MEMORANDUM AND ORDER

THE NETHERLANDS INSURANCE COMPANY, ET AL.,
DEFENDANTS,
AND CH INSURANCE BROKERAGE SERVICES, CO., INC.,
DEFENDANT-RESPONDENT.

---

DIRK J. OUDEMOOL, SYRACUSE, FOR PLAINTIFFS-APPELLANTS.

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP, ALBANY (ELIZABETH
GROGAN OF COUNSEL), FOR DEFENDANT-RESPONDENT.

---------------------------------------------------------------------------------------------

Appeal from an order of the Supreme Court, Onondaga County
(Deborah H. Karalunas, J.), entered January 11, 2011.  The order
granted the motion of defendant CH Insurance Brokerage Services, Co.,
Inc. for summary judgment dismissing the amended complaint against it.

It is hereby ORDERED that the order so appealed from is affirmed
without costs.

Memorandum:  Plaintiffs commenced this action alleging, inter
alia, negligence and breach of contract in connection with business
interruption coverage that CH Insurance Brokerage Services, Co., Inc.
(defendant) obtained for plaintiffs from former defendant, Peerless
Insurance Company, for which defendant The Netherlands Insurance
Company was substituted by stipulation of the parties after the action
was commenced.  We conclude that Supreme Court properly granted
defendant's motion for summary judgment dismissing the amended
complaint against it, but our reasoning differs from that of the
court.  Contrary to the court's determination, we agree with
plaintiffs that defendant failed to establish its entitlement to
judgment dismissing the amended complaint on the ground that no
special relationship existed between defendant and plaintiffs (*see
generally Murphy v Kuhn*, 90 NY2d 266, 271).  In support of its motion,
defendant submitted the deposition testimony of Deborah Voss
(plaintiff), the sole shareholder and principal of the corporate
plaintiffs, stating that defendant's representative reviewed, inter
alia, the types of businesses to be insured as well as sales figures,
and that he thereafter presented her with a proposal for insurance
coverage, which included $75,000 per incident for business

interruption insurance. When plaintiff questioned whether the amount was sufficient, defendant's representative assured her that it was and that defendant would review the coverage annually and recommend adjustments as the businesses grew. Thus, we conclude that defendant's own submission supports the contention that plaintiff relied upon defendant's expertise and assurance regarding the appropriate level of insurance to protect the corporate plaintiffs in the event of a loss (*cf. Hoffend & Sons, Inc. v Rose & Kiernan, Inc.*, 7 NY3d 152, 157-158).

As noted, however, we nevertheless conclude that the court properly granted defendant's motion. The commercial building that housed the corporate plaintiffs, as well as a corporate tenant, was damaged on three separate occasions in connection with water leaking from the roof, which caused a portion of the roof to collapse on two of those occasions. The first two incidents occurred while the limit for business interruption coverage was $75,000, and the third incident occurred after the policy was renewed and the coverage for business interruption had been reduced to $30,000. Plaintiffs alleged in their amended complaint and supplemental bill of particulars that defendant failed to provide adequate coverage and was negligent in reducing the coverage. However, the renewed policy was in effect for approximately nine months at the time of the third loss, and "[p]laintiff[s are] charged with conclusive presumptive knowledge of the terms and limits of [the policy]" (*Hoffend & Sons, Inc.*, 19 AD3d 1056, 1057, *affd on other grounds* 7 NY3d 152 [internal quotation marks omitted]). Thus, the cause of action against defendant for negligence and breach of contract with respect to the reduced policy limit is defeated as a matter of law (*see id.* at 1057-1058). Indeed, plaintiff admitted that she knew that the policy limit had been reduced from $75,000 to $30,000 and that, although she had contacted defendant to question the reduction, she did not hear back from defendant's representative and did not again contact defendant's representatives.

We note that plaintiff testified at her deposition that plaintiffs received only $3,197 on the claim for business interruption for the first incident and $30,000 for the second incident, and that no funds were paid on the claim for business interruption for the third incident. Plaintiff testified that, if the policy limit of $75,000 had been paid in a timely manner for each of the first two incidents, the plaintiff corporations would have remained operational. We therefore conclude that, even in the event that defendant negligently failed to obtain sufficient business interruption coverage for plaintiffs, any such negligence is not a proximate cause of plaintiffs' damages as a matter of law (*see generally Derdiarian v Felix Contr. Corp.*, 51 NY2d 308, 315, *rearg denied* 52 NY2d 784, 829).

All concur except CARNI, J., who dissents and votes to reverse in accordance with the following Memorandum: I respectfully dissent and would deny the motion of CH Insurance Brokerage Services, Co., Inc. (defendant) for summary judgment dismissing the amended complaint against it. At the outset, I note that I concur with my colleagues that "defendant's own submission supports the contention that [Deborah Voss (plaintiff)] relied upon defendant's expertise and assurance

regarding the appropriate level of insurance to protect the corporate plaintiffs in the event of a loss."  Thus, I further concur with my colleagues that defendant failed to establish its entitlement to judgment dismissing the amended complaint on the ground that no special relationship existed between defendant and plaintiffs (*see generally Murphy v Kuhn*, 90 NY2d 266, 271).  However, it is at this juncture that the majority and I part ways.

Given my agreement with the majority that plaintiffs' assertion of a "special relationship" with defendant remains viable, it thus follows that plaintiffs may be found to have relied upon defendant's expertise and assurance regarding the appropriate level of insurance to protect the corporate plaintiffs in the event of a loss.  It is therefore incongruous to conclude, simultaneously, as does the majority, that the cause of action against defendant for negligence and breach of contract is defeated as a matter of law because the renewed policy was in effect for approximately nine months at the time of the third loss, and "[p]laintiff[s are] charged with conclusive presumptive knowledge of the terms and limits of [the policy]" (*Hoffend & Sons, Inc. v Rose & Kiernan, Inc.*, 19 AD3d 1056, 1057, *affd on other grounds* 7 NY3d 152 [internal quotation marks omitted]).  Rather, if plaintiffs in fact relied upon defendant's expertise and assurance regarding the appropriate level of insurance coverage, "it is no answer for the broker to argue, as an insurer might, that the insured has an obligation to read the policy" (*Baseball Off. of Commr. v Marsh & McLennan*, 295 AD2d 73, 82; *see Hersch v DeWitt Stern Group, Inc.*, 43 AD3d 644, 645).  Indeed, the doctrine that an insured is presumed to know the terms and limits of the policy has its genesis in actions against *insurers* - not agents with whom a special relationship with the insured has been alleged or established (*see Metzger v Aetna Ins. Co.*, 227 NY 411, 414-417).

I also respectfully disagree with the majority's conclusion concerning the dispositive effect of the testimony of plaintiff that, if the $75,000 policy limits had been paid in a timely manner after the first two incidents, the plaintiff corporations would have remained operational.  The policy at issue provided "BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE."  Under the policy, the insured's "Business Income loss" is determined by the net income of the business before the direct physical loss or damage occurred.  The policy covers business income loss sustained due to the necessary suspension of "operations" during the "period of restoration" caused by the physical loss to the business property.

However, the policy clearly contemplates the possibility that the insured might not resume "operations" after the loss.  Specifically, the policy provides, "If you do not resume 'operations,' or do not resume 'operations' as quickly as possible, we will pay based on the length of time it would have taken to resume 'operations' as quickly as possible."  Thus, neither the policy nor the benefits paid thereunder guarantee or insure that the insured business will once again become operational, profitable or sustainable.  Instead, the policy insures against losing net business income and incurring extra expenses during the period when "operations" are suspended or during a

reasonable time in which to "resume operations" (*see generally Buffalo El. Co. v Prussian Natl. Ins. Co.*, 64 App Div 182, 185-187, *affd* 171 NY 25).  If and when the business resumes operations, the insurer's obligation to pay net income benefits terminates (*see Royal Indem. Co. v Retail Brand Alliance, Inc.*, 33 AD3d 392, 393, *lv denied* 8 NY3d 813, 11 NY3d 705).  However, if the business does not resume operations, the insured is entitled to business interruption coverage for the period of time it would have reasonably taken to resume operations (*see Children's Place Retail Stores, Inc. v Federal Ins. Co.*, 37 AD3d 243), and the duration of that time period ordinarily constitutes an issue of fact (*see Maple Leaf Motor Lodge v Allstate Ins. Co.*, 53 AD2d 1045, 1046).  Thus, an insured may receive payment of policy benefits for business interruption coverage and never resume operations without violating the terms and conditions of the policy (*see DiLeo v United States Fid. & Guar. Co.*, 109 Ill App 2d 28, 42-43, 248 NE2d 669, 676; *see also National Union Fire Ins. Co. v Scandia of Hialeah, Inc.*, 414 So 2d 533, 535).  There is no requirement in the policy that the insured must resume operations in order to recover business interruption losses (*see B A Props., Inc. v Aetna Cas. & Sur. Co.*, 273 F Supp 2d 673, 685).  Indeed, the claims analyst for the insurer testified at his deposition that business income loss payments made to an insured could be spent "on anything."

Plaintiffs' action against defendant arises from the failure to procure business interruption coverage limits in an amount consistent with the nature of the business, and its revenue, expense and net income performance history.  Whether defendant was negligent in failing to do so is measured not by whether plaintiffs would have resumed operations if timely paid the full but allegedly insufficient limits after each of the first two incidents.  Instead, it is measured by the amount of plaintiffs' business income losses when compared to the policy limits determined and procured by defendant.  Thus, I conclude that whether plaintiffs actually resumed operations is irrelevant to the proximate cause analysis.  As the movant seeking summary judgment dismissing the amended complaint, defendant had to establish that the policy limits were sufficient to cover the amount of plaintiffs' business income losses during the relevant policy periods (*see generally Zuckerman v City of New York*, 49 NY2d 557, 562).  Defendant did not meet that burden and thus is not entitled to summary judgment.

Moreover, in my view the record is confusing and inconclusive with respect to the amount of plaintiffs' business interruption losses for each incident.  However, the record does reflect that, with respect to the second incident, plaintiffs' claimed business income loss was the sum of $449,724.  Obviously, the disparity between that loss and the $75,000 policy limit would provide the necessary proximate cause for an award of damages with respect to the second incident in the event that plaintiffs were successful in convincing the trier of fact that the aforementioned "special relationship"

existed and that defendant was negligent.